UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| GARY TAYLOR,<br>Plaintiff,<br>v.<br>DEFENSE FINANCE AND ACCOUNTING SERVICE,<br>Defendant. | No. 2:25-cv-03667 WBS AC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF'S MOTION TO AMEND |

----oo0oo----

Defendant moves to dismiss plaintiff's declaratory judgment action. (Mot. to Dismiss ("MTD") (Docket No. 31-1).) Plaintiff argues dismissal is unwarranted, but he also seeks leave to file a third amended complaint. (Opp. (Docket No. 32); Mot. to Am. ("MTA") (Docket No. 33).)

I. Factual Background

Plaintiff is a retired member of the California Air National Guard. (Second Am. Compl. ("SAC") ¶ 5 (Docket No. 29).) Defendant is a federal agency that collects debts owed to the

Department of Defense.[1] (Id. ¶ 6.) Plaintiff challenges a debt that defendant seeks to collect from him. (Id. ¶ 2.)

In 2012, the California National Guard referred a $142,698.58 overpay debt to defendant to collect from plaintiff. (Id. ¶ 26; Welch Decl. ¶ 6 (Docket No. 31-2).) The debt arose from pay plaintiff received for working his civilian job as a National Guard technician and performing military alert duty on the same days. (SAC ¶¶ 9-10, 26.)

Plaintiff then sued defendant for prematurely sending the debt to a private collection agency. Taylor v. Def. Fin. & Acct. Serv., No. CIV. 2:12-2466 WBS DAD, 2014 WL 28820, at *3 (E.D. Cal. Jan. 2, 2014) (Shubb, J.). He did not, however, contest the debt itself. Id. at *8 n.4. In 2014, this court granted summary judgment for defendant but left plaintiff free to bring a later claim "directly challenging the [debt's] validity." Id. at *16.

Plaintiff alleges that the government's lawyer told his counsel after that case's summary judgment hearing that defendant would not try to collect the debt. (SAC ¶ 32.) In line with that assurance, defendant did not try to collect the purported debt for eleven years. (Id. ¶ 38.)

Some 11 years later, however, defendant sent plaintiff a bill for $145,638.30 -- the original sum, plus interest. (Id. ¶ 41.) Plaintiff promptly disputed the debt and requested an administrative hearing and a waiver. (Id. ¶¶ 42, 45.) After

---

[1] This order uses the department's statutory name: Department of Defense. 10 U.S.C. § 111(a). Since late 2025, however, "Department of War" has been its secondary title. Exec. Order No. 14,347, 90 Fed. Reg. 43,893 (Sept. 10, 2025).

nearly five months without a response from defendant, plaintiff filed this action. (Id. ¶ 45.)

The day before defendant filed its motion to dismiss, it ended collection activities for plaintiff's debt because it determined that collection costs would likely exceed recovery. (Welch Decl. ¶ 10; MTD Ex. A (Docket No. 31-2).)

II. Defendant's Motion to Dismiss

Defendant raises standing and mootness arguments. Because both challenges rely on matters outside the complaint, they are "factual attacks" on subject-matter jurisdiction. Edison v. United States, 822 F.3d 510, 517 (9th Cir. 2016). In resolving a factual attack, a court need not assume the jurisdictional allegations are true and may consider evidence outside the complaint without converting the motion into one for summary judgment. Id. (citing White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). Nonetheless, any factual dispute must be resolved in plaintiff's favor. Id. (citing Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1996).

A. Article III Standing

Standing requires injury-in-fact, causation, and redressability. Murthy v. Missouri, 603 U.S. 43, 57 (2024). Here, defendant only disputes injury-in-fact and redressability.[2]

1. Injury-in-Fact

An injury-in-fact must be "concrete, particularized,

[2] The court notes, however, that plaintiff's claims fulfill causation. By attempting to collect an allegedly invalid debt, defendant caused an imminent pocketbook injury to plaintiff. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) (requiring "a causal connection between the injury and the conduct complained of").

and actual or imminent." Id. (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013)).

Plaintiff alleges that defendant is trying to collect $145,638.30 from him on a debt he does not owe. (SAC ¶¶ 41, 62.) This disputed monetary obligation is a "classic pocketbook injury." Tyler v. Hennepin Cnty., 598 U.S. 631, 636 (2023).

Defendant argues that plaintiff has not alleged a concrete injury because defendant cannot invalidate his debt. (MTD at 4.) However, this argument conflates injury-in-fact with redressability. Defendant's purported lack of authority to invalidate the debt bears on whether a judgment against defendant would remedy plaintiff's injury. See Lujan, 504 U.S. at 569. It does not bear on that injury's existence.

Defendant also argues that plaintiff is no longer injured because defendant has recently stopped trying to collect the debt. (MTD at 4.) Standing, however, is determined "at the time the action commences." Carney v. Adams, 592 U.S. 53, 60 (2020). Defendant's post-filing conduct is irrelevant.[3]

2. Redressability

To satisfy redressability, the requested relief must be "(1) substantially likely to redress [plaintiff's] injuries; and (2) within the district court's power to award." Juliana v. United States, 947 F.3d 1159, 1170 (9th Cir. 2020).

Plaintiff requests declaratory relief. A federal court

---

[3] Relatedly, defendant argues that it is "hypothetical" or "speculative" whether it "might seek to collect the debt in the future." (MTD at 4.) For standing purposes, however, it is sufficient that defendant had resumed collections when plaintiff filed suit. See Carney, 592 U.S. at 60.

may grant declaratory relief "[i]n a case of actual controversy within its jurisdiction" regardless of whether "further relief is or could be sought." 28 U.S.C. § 2201(a); see Fed. R. Civ. P. 57. Declaratory relief must "completely resolve" the case. Theme Promotions, Inc. v. News Am. Mktg. FSI, 546 F.3d 991, 1010 (9th Cir. 2008) (citing Calderon v. Ashmus, 523 U.S. 740, 749 (1998)).

Plaintiff seeks four declarations: first, that the debt is invalid because his compensation was lawful; second, that defendant cannot collect the debt under the statute of limitations; third, that defendant is equitably estopped from raising any limitations defense; and fourth, that defendant acted arbitrarily and capriciously under the Administrative Procedure Act. (SAC at 17-18.)

Defendant seeks dismissal of the entire complaint, but its redressability arguments address only the declaration that the debt is invalid. The court must nonetheless assess redressability as to the other requested declarations, because "[t]he requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." In re Pena, 974 F.3d 934, 938 (9th Cir. 2020) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998)); see also TransUnion LLC v. Ramirez, 594 U.S. 413, 431 (2021) ("[P]laintiffs must demonstrate standing . . . for each form of relief that they seek.").

i. Debt Validity Declaration

Plaintiff's first request is for a declaration that

"the alleged overpay debt is invalid; that plaintiff's receipt of dual compensation was lawfully authorized; and that defendant's position to the contrary is arbitrary, capricious, and contrary to law." (SAC at 17.) This request is the classic declaratory judgment claim: a party facing a demand for payment asks the court to declare that he owes nothing. See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 242 (1937) (holding insurer could seek declaration that it owed no payment on lapsed policies).

Defendant contends that a declaration that the debt is invalid would not redress plaintiff's injury because defendant cannot invalidate a debt "that it did not establish and has no authority to modify." (MTD at 5.) However, defendant does have that authority. The Federal Claims Collection Standards allow an agency to "determine[] that a debt is plainly erroneous or clearly without legal merit." 31 C.F.R. § 903.1(b). The Department of Defense defines defendant's Debt and Claims Management Office as a "Debt Collection Office (DCO)" and requires DCOs to "ensure that all debts are valid and legally enforceable." U.S. Dep't of Defense, DoW FMR Supplemental, vol. 16, ¶¶ 2.2.3.1-2.2.3.2 (Sept. 2026). Defendant cites no contrary authority.[4] Accordingly, its argument fails. Plaintiff's

---

[4] The closest authority supporting defendant's argument is that the DoD's Financial Management Regulation bars merit determinations of debts referred from non-DoD federal agencies. U.S. Dep't of Def., DoW 7000.14-R, Financial Management Regulation, vol. 16, ¶ 3.19.1 (Sept. 2026). This debt, however, did not come from outside the DoD. It arose from plaintiff's pay as a National Guard technician. (SAC ¶¶ 9, 12.) By statute, a National Guard technician is "an employee of the Department of the Army or the Department of the Air Force," both of which are within the DoD. 32 U.S.C. § 709(e); 10 U.S.C. §§ 111(b)(6), (8).

request satisfies redressability.

ii. Statute of Limitations Declaration

Plaintiff's second request is for a declaration that defendant "failed to meet the applicable statute of limitations under 31 U.S.C. § 3712(d) and cannot collect or attempt to collect the alleged debt again by any mechanism." (SAC at 18.) As with a declaration that the debt is invalid, a declaration that collection is time-barred would wholly redress plaintiff's injury. Accordingly, plaintiff may seek this declaration.

iii. Equitable Estoppel Declaration

Plaintiff next seeks a declaration "that defendant is equitably estopped from asserting any limitations defense based on its own written commitments, representations, eleven years of induced inaction, and government-initiated pre-filing settlement discussions." (SAC at 18.) The court need not address the question of whether an agency of the United States can be subject to equitable estoppel in this case (See Morgan v. Gonzales, 495 F.3d 1084, 1092 (9th Cir. 2007), because no litigant can "use a declaratory-judgment action to obtain piecemeal adjudication of defenses that would not finally and conclusively resolve the underlying controversy." United States v. Schlenker, 24 F.4th 1301, 1308 (9th Cir. 2022) (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 n.7 (2007)).

Here, the declaration would remove one of defendant's possible defenses, but whether the debt is valid and whether defendant may collect it would still be undecided -- the dispute would not be "conclusively resolved." Because this declaration would not redress plaintiff's injury, he cannot seek it.

iv. Arbitrary and Capricious Action Declaration

The fourth declaration plaintiff seeks is that "defendant's failure to afford plaintiff the individualized waiver review it gave [another servicemember] -- despite plaintiff's materially stronger equities -- and its confirmed absence of any consistent documented criteria, to be arbitrary and capricious under [§ 706 of the Administrative Procedure Act]." (SAC at 18.)

Plaintiff's requested declaration, however, does not present an Article III case or controversy. See Calderon, 523 U.S. at 747-49. It would not resolve whether defendant may collect the debt. Nor would it resolve a narrower dispute over waiver review, because plaintiff does not ask the court to compel defendant to act on his request.[5] It challenges defendant's process in general, not any specific decision about the debt.[6] See Summers v. Earth Island Inst., 555 U.S. 488, 496 (2009) (holding "a procedural right in vacuo" cannot "create Article III standing"). The declaration would be "worthless" to plaintiff,

---

[5] This determination is without prejudice to a claim under 5 U.S.C. § 706(2). However, defendant lacks authority to waive defendant's debt. Because the debt exceeds the statutory thresholds, only the Director of the Office of Management and Budget may waive it. 32 U.S.C. § 716(a) (National Guard waivers over $10,000); 10 U.S.C. § 2774(a) (uniformed service waivers over $10,000); 5 U.S.C. § 5584(a) (agency employee waivers over $1,500). Through a chain of delegations from the OMB Director, the Defense Office of Hearings and Appeals Director may grant waivers over those thresholds. 32 C.F.R. § 284.5(b). Defendant, however, can only deny or refer such applications. 32 C.F.R. § 284.5(d). A judgment compelling defendant to act would thus be limited to those authorized actions.

[6] Moreover, documented criteria for waiver applications exist. See 32 C.F.R. pt. 284, app. B.

and he lacks standing to seek it. Steel Co., 523 U.S. at 106.

B. Mootness

When "events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it . . . a federal court must dismiss the case as moot." FBI v. Fikre, 601 U.S. 234, 240 (2024). A defendant's "voluntary cessation of a challenged practice," however, "will moot a case only if the defendant can show that the practice cannot 'reasonably be expected to recur.'" Id. at 241 (quoting Friends of the Earth, Inc. v. Laidlaw Env't Servs., 528 U.S. 167, 189 (2000)). This is a "formidable burden." Id. (quoting Friends of the Earth, Inc., 528 U.S. at 190).

Defendant argues that this case is moot for two reasons: it has ended collection activities on plaintiff's debt, and the director of its Debt and Claims Management Office has declared under penalty of perjury that it will no longer try to collect the debt. (MTD at 5-6.) Neither carries its burden.

Under the Federal Claims Collection Act, an agency head "may suspend or end collection action on [a claim of the Government of not more than $100,000 (excluding interest) . . . that has not been referred to another executive or legislative agency for further collection action] when it appears" collection costs are likely to exceed recovery. 31 U.S.C. § 3711(a)(3) (relevant cross-referenced text from § 3711(a)(2) substituted).[7]

---

[7] The substituted portion is "a claim referred to in clause (2) of this subsection." 31 U.S.C. § 3711(a)(3).

Defendant disputes substitution of the cross-referenced portion of § 3711(a)(2) into § 3711(a)(3). (Reply at 4 (Docket

The Federal Claims Collection Standards further vest termination and suspension authority for debts over $100,000 solely with the Department of Justice. 31 C.F.R. § 903.1(b). There is one exception: if an agency "determines that a debt is plainly

---

No. 35).) It argues that § 3711(a)(2)'s dollar and non-referral limits apply only to compromises, not suspensions or terminations. This argument fails for four reasons.

First, defendant's reading would mean that the cross-reference picks up only the words "a claim of the Government." That interpretation arbitrarily stops partway through the clause defining the relevant claims.

Second, defendant's reading would permit agencies more freedom to terminate collection on large claims than to compromise them. An agency could stop collecting a $1 million claim on its own authority, yet it would need Department of Justice approval to settle that same claim for $900,000. A reading that lets an agency abandon a claim it could not compromise is untenable. See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 371 (1988) (explaining that "the remainder of the statutory scheme" clarifies a provision where only one reading "produces a substantive effect that is compatible with the rest of the law").

Third, defendant's reading clashes with the statutory history. As originally enacted, the provision read: "[W]ith respect to such claims of the United States that have not been referred to another agency . . . for further collection action and that do not exceed $20,000, exclusive of interest, the head of an agency . . . may (1) compromise any such claim, or (2) cause collection action on any such claim to be terminated or suspended where it appears . . . that the cost of collecting the claim is likely to exceed the amount of recovery." Federal Claims Collection Act of 1966, Pub. L. No. 89-508, 80 Stat. 309. That structure applied the dollar and non-referral limits to compromises, suspensions, and terminations. Congress subsequently codified the Act with its current provisional structure "without substantive change" to its meaning. Act of Sept. 13, 1982, Pub. L. No. 97-258, 96 Stat. 1067.

Fourth, defendant's interpretation conflicts with that of the Department of Defense. The Department of Defense authorizes defendant to suspend collection only on debts of $100,000 or less. U.S. Dep't of Def., DoW 7000.14-R, Financial Management Regulation, vol. 4, ¶ 5.19 (Sept. 2026). The Federal Claims Collection Standards also state the $100,000 limit. 31 C.F.R. § 903.1(b).

erroneous or clearly without legal merit," the agency may terminate the collection on its own, whatever the amount. Id.

Here, defendant states that it stopped trying to collect plaintiff's debt because it determined that collection costs would likely exceed recovery. (MTD at 5.) But because the debt is $142,698.58 -- over $100,000 -- it could not unilaterally terminate collection activities on that basis. Instead, defendant had two options: it could have referred the debt to the Department of Justice, or it could have determined that the debt was "plainly erroneous or clearly without legal merit." 31 C.F.R. § 903.1(b). It did neither. An unauthorized termination does not show that there is no reasonable expectation that defendant will "return to its old ways." Fikre, 601 U.S. at 241 (quoting United States v. W. T. Grant Co., 345 U.S. 629, 632 (1953)).

Moreover, even if defendant could terminate collection activities on a cost-versus-recovery basis, that termination would not have discharged plaintiff's debt. See 31 C.F.R. § 903.5(a) ("[T]he debt remains delinquent and further collection action may be pursued at a later date."); see also id. § 903.3(b) (permitting record retention after collection-activity termination for various purposes, including reinitiation of collection); 31 U.S.C. § 3711(i)(2) (permitting debt sales after collection-activity termination with Treasury's approval). In other words, the debt lives on, and nothing restrains defendant from trying to collect it again.[8]

---

[8] If defendant had instead discharged the debt, its mootness argument would be more persuasive. But discharge

The statement of defendant's Debt and Claims Management Office Director does not moot the case either. Such declarations are not enough. See W. T. Grant Co., 345 U.S. at 633 (noting affidavits disclaiming intent to revive challenged conduct insufficient to moot case); Fikre, 601 U.S. at 242 (similar). At most, the declaration suggests that defendant will not try to collect during the Director's tenure. Defendant has not shown, however, that the Director's declaration binds his successors.

Moreover, defendant has allegedly abandoned a similar assurance before.[9] According to the SAC, in 2013, defendant's counsel assured plaintiff that it would not collect; yet in 2025, defendant billed plaintiff. (SAC ¶¶ 32, 41.) Whether a party has honored its past assurances indicates whether it will honor its present ones. One broken promise easily becomes two. This case is live.

III. Plaintiff's Motion to Amend

This action's pretrial scheduling order requires good cause for further amendments to the pleadings. (Docket No. 3 at 2.) Plaintiff must therefore show good cause under Rule 16(b)

---

requires an agency to first "take all appropriate steps to collect such debt," and defendant does not argue it has done so. 31 U.S.C. § 3711(g)(9).

Moreover, this requirement presupposes a valid debt. A "debt" under the Debt Collection Improvement Act is "any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States." 31 U.S.C. § 3701. It follows that if an "appropriate official" determines that a purported debt is not owed because it is legally invalid, it is not a "debt" at all. Therefore, it cannot be discharged -- only deemed void ab initio.

[9] Defendant does not offer evidence disputing this allegation, and it has the burden of showing that the voluntary cessation exception does not apply. Fikre, 601 U.S. at 241.

before Rule 15's policy of "extreme liberality" applies. Eminence Cap., LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003); see Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-09 (9th Cir. 1992) (citing Fed. R. Civ. P. 16(b)). This standard "primarily considers the diligence of the party seeking the amendment." Johnson, 975 F.2d at 609.

Plaintiff has been diligent. Defendant asserted termination of collection on the debt the day before it moved to dismiss, and its motion rests largely on that termination. Plaintiff moved to amend within 14 days. He has therefore shown good cause. Moreover, no circumstance precluding amendment under Rule 15 -- undue delay, bad faith, repeated failure to cure, undue prejudice, or futility -- is present.[10] Foman v. Davis, 371 U.S. 178, 182 (1962). Accordingly, plaintiff will be granted leave to file a Third Amended Complaint consistent with this Order.

IT IS THEREFORE ORDERED that defendant's motion to dismiss (Docket No. 31) be, and the same hereby is, GRANTED as to Prayers C and D, which are DISMISSED without prejudice for lack of jurisdiction. The motion to dismiss is otherwise DENIED.

IT IS FURTHER ORDERED that plaintiff's motion to amend (Docket No. 33) be, and the same hereby is, GRANTED. Within 14 days of this Order's filing date, plaintiff may file a Third Amended Complaint if he can do so consistent with this Order.

---

[10] Although the proposed Third Amended Complaint reasserts a defective request discussed above, that deficiency is curable, so amendment is not futile. (See MTA Ex. 1 at 25 (Docket No. 33-1) (Prayer C).)

Dated: November 10, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE